UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
┌─────────────────────────────────────┐
│ NAOMI GASKIN-EL,                     │
│                 Plaintiff,           │
│ -against-                            │
│ 1199SSEIU NATIONAL BENEFIT           │
│ FUND,                                │
│                 Defendant.           │
└─────────────────────────────────────┘
```

No. 24-CV-1169 (LAP)

OPINION AND ORDER

LORETTA A. PRESKA, Senior United States District Judge:

Before the Court is the motion to dismiss filed by Defendant 1199SEIU National Benefit Fund (the "Fund"). (See Motion to Dismiss Plaintiff's Complaint ("Motion to Dismiss"), dated May 6, 2024 [dkt. no. 9].)[1] Plaintiff Naomi Gaskin-El ("Plaintiff") opposes the Motion. (See Plaintiff's Memorandum of Law in Opposition to Defendant's Motion to Dismiss ("Pl. Opp'n"), dated May 28, 2024 [dkt. no. 14].) For the reasons stated below, Defendant's Motion is DENIED.

---

[1] (See also Memorandum of Law in Support of Defendant's Motion to Dismiss Plaintiff's Complaint ("Def. Br."), dated May 6, 2024 [dkt. no. 11]; Affirmation of Ian A. Weinberger, Esq. ("Weinberger Aff."), dated May 6, 2024 [dkt. no. 10]; Defendants' Reply Memorandum of Law in Further Support of Defendant's Motion to Dismiss Plaintiff's Complaint ("Def. Reply"), dated June 14, 2024 [dkt. no. 17].)

I.  **Background**[2]

   **A. Factual Background**

   Plaintiff began working at the Fund in March 2004 as a telephone representative and was promoted over the years, eventually becoming a quality control reviewer in June 2019. (See Complaint ("Compl."), dated Feb. 16, 2024 [dkt. no. 1] ¶ 19.) Plaintiff is Muslim and has been a member of the Moorish Science Temple of America for her entire life. (Id. ¶ 42.)  The Fund is a self-funded multi-employer welfare benefit trust fund. (Id. ¶ 4.)

   On August 27, 2021, as a result of the COVID-19 pandemic, the Fund announced that it was adopting a vaccination policy, whereby all employees were required to be fully vaccinated against COVID-19 by October 25, 2021 as a condition of employment. (Id. ¶ 30; see also Ex. B to the Compl. ("Ex. B") [dkt. no. 1-2].)  Under the Fund's policy, "all employees [were] required to receive the COVID-19 vaccine unless a reasonable accommodation for medical or religious reasons is approved." (Ex. C to the Compl. ("Ex. C") [dkt. no. 1-3] at 1; see also Compl. ¶ 34 (quoting Ex. C).)  To request a medical or religious accommodation, an employee was required to submit a request in writing to Human Resources by

---

[2] The facts in this opinion are drawn primarily from the Complaint and documents integral to the Complaint of which this Court takes judicial notice. (See infra Part II(B) (outlining standard for incorporating extrinsic documents).)

September 17, 2021.  (Ex. C at 2; <u>see</u> <u>also</u> Compl. ¶ 35.)  The policy did not notify employees as to any particular information or documentation required to be submitted as part of an accommodation request.  (See Ex. C. at 2.)

In accordance with the Fund's policy, on September 16, 2021, Plaintiff submitted a timely written request for a religious accommodation.  (See Compl. ¶ 39; Ex. D to the Compl. ("Ex. D") [dkt. no. 1-4].)  Specifically, Plaintiff submitted a completed "Request for Accommodation" form, provided to her by the Fund (Ex. D at 1-3), and a "Declaration of Faith" certificate from the Moorish Mosque (<u>see</u> <u>id.</u> at 4).  In the Request for Accommodation form, Plaintiff sought permission to work remotely until the COVID-19 vaccination mandate was no longer in place.  (<u>Id.</u> at 1.)  When asked to "describe the religious belief or practice and how it relates to COVID-19 vaccination" on the form, Plaintiff wrote "the 1st Amendment to the U.S. Constitution, Article I – religious freedom."  (<u>Id.</u>)  Plaintiff also explained that she was vaccinated "by force" as a child for measles and mumps.  (<u>Id.</u> at 2.)  On the section of the form to be completed by Plaintiff's religious leader, Yusef Ali Ibrahim, Grand Sheik, wrote that the basis of Plaintiff's "faith/beliefs which are contrary to the practice of vaccination or use of the COVID-19 vaccination" was the "U.S. Declaration of Independence," the "Bill of Rights – Amendment 1," and the "United States Constitution – Article VI."  (<u>Id.</u> at 3.)

In her Declaration of Faith certificate, Plaintiff declared that she "accept[s] 'Islam' as [her] Religion," and affirmed that "there is no God but 'Allah,'" and "Muhammad is the messenger of 'Allah.'" (Id. at 4.)  In the same certificate, Plaintiff vowed to keep the fundamental principles of Islam, including daily prayers, charitable giving, fasting during Ramadan, and making the pilgrimage to Mecca once in her lifetime.  (Id.; Compl. ¶ 43.)

On October 1, 2021, the Fund denied Plaintiff's request for a religious accommodation, explaining it had "insufficient information to identify the aspect of [her] religious belief that prevent[ed] [her] from receiving any of the available COVID-19 vaccines."  (Ex. E to the Compl. ("Ex. E") [dkt. no. 1-5]; Compl. ¶ 52.)  The Fund permitted Plaintiff to submit additional information for its consideration within five days, along with a Health Insurance Portability and Accountability Act ("HIPAA") disclosure consent form.  (Ex. E; Compl. ¶ 52.)

On October 4, 2021, Plaintiff appealed the Fund's decision by submitting a personal statement outlining her objection to the COVID-19 vaccination policy (Ex. F to the Compl. ("Ex. F") [dkt. no. 1-6]; Compl. ¶ 56); providing the requested HIPAA form (Ex. 1 to the Weinberger Aff. ("Ex. 1") [dkt. no. 10-1]; Compl. ¶ 57); and enclosing "additional supporting documentation" including a "document from [her] religious organization" that expressed opposition to certain vaccines (Compl. ¶¶ 57-58; Ex. 3 to the

Weinberger Aff. ("Ex. 3") [dkt. no. 10-3]).  In her personal statement, Plaintiff explained, "I am against the use of [sic] practice of testing vaccines on aborted fetal cell lines as is well documented.  I am also against the use of all vaccines.  My body is my temple and in that temple I was created with a natural immune system to guard against and fight any foreign agent." (Ex. F at 1.)  Plaintiff wrote that the only prescribed medication she had taken was thyroid medication and "to the best of [her] knowledge from research it is not made from aborted fetuses, and if it is discovered that it is there are many other alternatives." (Id.)  She added "[p]rior to Covid, I haven't had as much as a cold since 2013, because my GOD GIVEN immune system is working the way it was designed to as well as the natural foods and vitamins in nature." (Id.)  "Please do not tell me that man made synthetic antibodies are better than my God given ones . . . . I fully believe that the Creator of all things had the Omniscience to create in nature sustenance to sustain all beings." (Id.)  The document that Plaintiff attached to her statement from the "Moorish Holy Temple of Science of the World" relates to the passage of a Connecticut Bill and does not mention COVID-19 but objects to vaccines "derived from aborted fetal cell tissue" as "diametrically against our belief that no life should be 'aborted'. Let alone used as an agent to be injected into the 'temple of God.'" (Compl. ¶ 58 (quoting Ex. 3 at 9).)

On October 21, 2021, the Fund denied Plaintiff's request for a religious accommodation.  (Compl. ¶ 62; Ex. G to the Compl. ("Ex. G") [dkt. no. 1-7].)  The Fund determined that Plaintiff's request failed because the mRNA COVID-19 vaccines "are not derived, developed, or produced in fetal cell lines."  (Ex. G at 1.)  In addition, according to the Fund, "[i]f [Plaintiff's] religious belief prohibits the use of pharmaceuticals that affect, augment, or counteract the natural God-given systems of the human body and their functions, then [her] medical history would show no medications for [her] or [her] minor children."  (Id.)

On November 19, 2021, following Plaintiff's failure to provide proof of vaccination in accordance with the Fund's policy, Plaintiff was terminated.  (Compl. ¶¶ 76-78; Ex. H to the Compl. ("Ex. H") [dkt. no. 1-8].)

**B.    Procedural History**

On December 13, 2023, the U.S. Equal Employment Opportunity Commission ("EEOC") issued Plaintiff a Notice of Right to Sue.  (See Ex. A to the Compl. ("Ex. A") [dkt. no. 1-1].)

On February 16, 2024, Plaintiff filed her Complaint against the Fund in this Court, alleging religious discrimination for failure to accommodate Plaintiff's sincerely held religious beliefs under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq. ("Title VII"), the New York State Human Rights Law, N.Y. Exec. Law § 290 et seq. ("NYSHRL"), and the New York

6

City Human Rights Law, N.Y.C. Admin. Code § 8-101 et seq. ("NYCHRL"). (Compl. ¶ 1.)

On May 6, 2024, the Fund filed its Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). (See Motion to Dismiss at 1.)

## II. Legal Standards

### A. Pleading Standard Under Rule 12(b)(6)

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" In re Actos End-Payor Antitrust Litig., 848 F.3d 89, 97 (2d Cir. 2017) (quoting Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678. That "standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Palin v. N.Y. Times Co., 940 F.3d 804, 810 (2d Cir. 2019). Evaluating "whether a complaint states a plausible claim for relief" is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Iqbal, 556 U.S. at 679.

When considering a motion to dismiss, the Court "accept[s] as true all factual allegations and draw[s] from them all reasonable

inferences" in the plaintiff's favor. Dane v. UnitedHealthcare Ins. Co., 974 F.3d 183, 188 (2d Cir. 2020) (cleaned up). The Court is not required, however, "to credit conclusory allegations or legal conclusions couched as factual allegations." Id. (ellipsis omitted). "Accordingly, threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Nielsen v. Rabin, 746 F.3d 58, 62 (2d Cir. 2014) (cleaned up).

**B.    Incorporation of Extrinsic Documents**

In determining the sufficiency of a claim under Rule 12(b)(6), a court is "normally required to look only to the allegations on the face of the complaint." Roth v. Jennings, 489 F.3d 499, 509 (2d Cir. 2007). However, a court may also consider documents that are: (1) attached to the complaint; (2) incorporated by reference in the complaint; or (3) integral to the complaint, even if not explicitly incorporated by reference. United States ex rel. Foreman v. AECOM, 19 F.4th 85, 106 (2d Cir. 2021); Chambers v. Time Warner, Inc., 282 F.3d 147, 152-53 (2d Cir. 2002). The complaint "'is deemed to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference.'" Chambers, 282 F.3d at 152 (quoting Int'l Audiotext Network, Inc. v. Am. Tel. & Tel. Co., 62 F.3d 69, 72 (2d Cir. 1995)).

To incorporate a document by reference, the complaint "must

make a clear, definite and substantial reference" to the document. DeLuca v. AccessIT Grp., Inc., 695 F. Supp. 2d 54, 60 (S.D.N.Y. 2010) (internal quotation marks and citation omitted). This requires more than "[a] mere passing reference or even references," Williams v. Time Warner, Inc., 440 F. App'x 7, 9 (2d Cir. 2011) (summary order), or a "limited quotation," Goldman v. Belden, 754 F.2d 1059, 1066 (2d Cir. 1985). "Even if the referenced document is relevant, the court may not consider it based on a plaintiff's 'limited and indirect citations.'" Jacobson v. Conflict Int'l, Inc., No. 22-CV-10177, 2024 WL 1348863, at *4 (S.D.N.Y. Mar. 29, 2024) (quoting In re Take-Two Interactive Sec. Litig., 551 F. Supp. 2d 247, 299 n.39 (S.D.N.Y. 2008)). In contrast, "explicit citations to specific provisions of a document are sufficient to incorporate that document by reference." Id. (citing Wawa, Inc. v. Mastercard Int'l, Inc., No. 22-CV-03186, 2023 WL 6147177, at *5 (S.D.N.Y. Sept. 20, 2023)).

"Where a document is not incorporated by reference, the court may [nevertheless] consider it where the complaint relies heavily upon its terms and effect, thereby rendering the document integral to the complaint." AECOM, 19 F.4th at 106; see also Palin, 940 F.3d at 811. However, for the Court to consider such a document, the plaintiff must have actually "reli[ed] on the terms and effect of [the] document in drafting the complaint . . . . [M]ere notice or possession is not enough" to merit the Court's consideration.

<u>Chambers</u>, 282 F.3d at 153.

III.  **Discussion**

    **A.    Introduction of Extrinsic Documents**

       Plaintiff attaches eight documents to her Complaint (dkt. nos. 1-1-9), all of which the Court may consider in evaluating the sufficiency of her claims.  <u>See</u> <u>Chambers</u>, 282 F.3d at 152-53.  The Fund submits three documents in support of the Motion to Dismiss: (1) an Authorization for Release of Protected Health Information form ("Authorization Form") signed by Plaintiff on October 4, 2021 (Ex. 1); (2) Plaintiff's prescription medication records from October 21, 2021, obtained by the Fund in accordance with the Authorization Form signed by Plaintiff (Ex. 2 to the Weinberger Aff. ("Ex. 2") [dkt. no. 10-2]); and (3) the set of documents Plaintiff submitted on October 4, 2021 in support of her appeal of the Fund's decision to deny Plaintiff a religious accommodation (Ex. 3).

       The Complaint makes clear and explicit references to Exhibits 1 and 3—the Authorization Form and "additional supporting documentation, including legal materials and information" that Plaintiff submitted in appealing the Fund's denial of her religious exemption request.  (Compl. ¶¶ 52, 57.)  To explain her religious objection to the COVID-19 vaccination, the Complaint also quotes directly from the additional supporting documentation Plaintiff submitted.  (<u>Id.</u> ¶ 58 (quoting Ex. 3 at 9).)  Exhibit 1 and 3 are

therefore incorporated by reference and the Court may consider them.  See Chambers, 282 F.3d at 152-53.

With respect to Exhibit 2, Plaintiff's prescription medication records, the Complaint states that the Fund "invited [Plaintiff] to submit additional information in support of her request, along with a HIPAA authorization form to obtain her medication and vaccination records" and that Plaintiff then submitted the Authorization Form.  (Compl. ¶¶ 52, 57.)  Plaintiff further alleges that in denying her appeal, the Fund reasoned that if Plaintiff's religious beliefs prohibited "the use of pharmaceuticals that affect, augment, or counteract the natural God-given systems of the human body and their functions, then [Plaintiff's] medical history would show no medications for [her]self or [her] minor children."  (Id. ¶ 64.)  Because the Complaint makes only limited references in passing to Plaintiff's medical history, and there is no clear and explicit citation to Plaintiff's medical records, the Complaint does not incorporate Exhibit 2 by reference.  See Jacobson, 2024 WL 1348863, at *4.

The Court also concludes that the Complaint does not "rel[y] heavily upon [the] terms and effect" of Plaintiff's medical records such that they are rendered integral to the Complaint.  AECOM, 19 F.4th at 106.  While the Fund may have considered Plaintiff's medical records in choosing to deny Plaintiff a religious exemption, Plaintiff does not rely on her medical records to assert

her claim of religious discrimination.  Cf. BonWorth, Inc. v.
Runway 7 Fashions, Inc., No. 17-CV-9712, 2023 WL 5016321, at *9
(S.D.N.Y. June 20, 2023), report and recommendation adopted, 2023
WL 4421871 (S.D.N.Y. July 10, 2023) (considering email that
provided the "necessary predicate" for plaintiff's claim).  The
Court declines to consider Exhibit 2.

> **B.    Plaintiff's Failure to Accommodate Claims**
>
> > 1.  Title VII Claim

Plaintiff's first cause of action is a Title VII claim of
employment discrimination based on the Fund's failure to
accommodate Plaintiff's religious objection to its COVID-19
vaccination policy.  (See Compl. ¶¶ 81-88.)

"To make out a prima facie case of religious discrimination
based on a failure to accommodate in violation of Title VII,"
Plaintiff must allege that she "(1) [] held a bona fide
religious belief conflicting with an employment requirement";
(2) [] informed [her] employers of this belief; and (3) [was]
disciplined for failure to comply with the conflicting
employment requirement."  Baker v. The Home Depot, 445 F.3d 541,
546 (2d Cir. 2006).  Once the employee establishes a prima facie
case, "the burden then shifts to the employer to show it could
not accommodate the employee['s] religious beliefs without undue
hardship.'"  Algarin v. N.Y.C. Health + Hosps. Corp., 678 F.
Supp. 3d 497, 508 (S.D.N.Y. 2023) (quoting Knight v. Conn. Dep't

of Pub. Health, 275 F.3d 156, 167 (2d Cir. 2001)), aff'd, No.
23-1063, 2024 WL 1107481 (2d Cir. Mar. 14, 2024) (summary
order).  An accommodation presents an undue hardship if the
employer can "show [that] a burden is substantial in the overall
context of an employer's business."  D'Cunha v. Northwell Health
Sys., No. 23-476, 2023 WL 7986441, at *2 (2d Cir. Nov. 17, 2023)
(summary order) (quoting Groff v. DeJoy, 600 U.S. 447, 468
(2023)); accord Kueh v. N.Y. & Presbyterian Hosp., No. 23-CV-
00666, 2024 WL 4882172, at *4 (S.D.N.Y. Nov. 25, 2024).

      To survive a motion to dismiss, the "complaint need not
allege facts establishing each element of a prima facie case of
discrimination" but "it must at a minimum assert nonconclusory
factual matter sufficient to 'nudge' [the] clai[m] 'across the
line from conceivable to plausible . . . .'"  E.E.O.C. v. Port
Auth. of N.Y. & N.J., 768 F.3d 247, 254 (2d Cir. 2014) (citing
Swierkiewicz v. Sorema N.A., 534 U.S. 506, 510 (2002)) (quoting
Iqbal, 556 U.S. at 680.

      The Fund does not dispute that Plaintiff has sufficiently
established the second and third elements of her prima facie
case.  Plaintiff plainly informed her employer of her religious
belief by submitting 1) a written request for a religious
accommodation, partially completed by her religious leader (Ex.
D at 1-3); 2) a Declaration of Faith certificate from her Mosque
in which Plaintiff declared she accepts Islam as her religion

(id. at 4); and 3) a personal statement detailing her objection to the COVID-19 vaccine (Ex. F).  There is also no question that Plaintiff was "disciplined for failure to comply with the conflicting employment requirement." Baker, 445 F.3d at 546. She was terminated for failing to submit proof of compliance with the Fund's COVID-19 vaccination policy.  (Compl. ¶¶ 76-78; Ex. H.)  The Fund also does not claim that affording Plaintiff an accommodation would have presented an undue hardship.

Instead, the Fund's Motion to Dismiss argues only that Plaintiff's Title VII claim must be dismissed because Plaintiff fails to allege sufficiently a bona fide religious belief. (Def. Br. at 9.)  First, the Fund argues that Plaintiff does not explain "what about her religion . . . prevents her from taking a vaccine that was tested on aborted fetal cell lines" and asserts that Plaintiff's use of medications tested on fetal cell lines contradicts her purported belief.  (Id. at 10-12.) Second, the Fund argues Plaintiff's allegation that she is opposed to all vaccines because her "body is a temple" with a "natural immune system to guard against and fight any foreign agent" is not "connect[ed] . . . to a religious belief in the Qu'ran or any other religious text."  (Id. at 12-13.)  Such a broad statement is, in the Fund's view, "more akin to a personal belief that the vaccine is impure or dangerous[.]"  (Id. at 13.)

Title VII defines religion to include "all aspects of

14

religious observance and practice, as well as belief." 42 U.S.C.
§ 2000e(j).  The inquiry as to whether a person's belief is
religious is twofold: "whether the beliefs professed by a
[plaintiff] are sincerely held and whether they are, in [her]
own scheme of things, religious."  Patrick v. LeFevre, 745 F.2d
153, 157 (2d Cir. 1984).

Both the Supreme Court and Court of Appeals have warned
that courts must have a limited function in determining whether
religious beliefs are protected.  See, e.g., Thomas v. Rev. Bd.
of Indiana Emp. Sec. Div., 450 U.S. 707, 714 (1981); Friedman v.
Clarkstown Cent. Sch. Dist., 75 F. App'x 815, 818 (2d Cir. 2003)
(summary order).  "The determination of what is a 'religious'
belief or practice is more often than not a difficult and
delicate task . . . . [T]he resolution of that question is not
to turn upon a judicial perception of the particular belief or
practice in question; religious beliefs need not be acceptable,
logical, consistent, or comprehensible to others in order to
merit First Amendment protection."  Thomas, 450 U.S. at 714.
The inquiry "examines an individual's inward attitudes towards a
particular belief system" and "[i]mpulses prompted by dictates
of conscience as well as those engendered by divine commands are
[ ] safeguarded against secular intervention, so long as the
claimant conceives of the beliefs as religious in nature."
LeFevre, 745 F.2d at 157-58 (citation omitted).  In addition,

15

the sincerity of a plaintiff's religious belief "is a question
of fact—unsuitable to resolution at the motion to dismiss
stage."  <u>Gardner-Alfred v. Fed. Rsrv. Bank of New York</u>, 651 F.
Supp. 3d 695, 721 (S.D.N.Y. 2023) (citation omitted).

    The Court concludes Plaintiff has sufficiently alleged a
bona fide religious belief that conflicted with the Fund's
COVID-19 vaccination policy.  Plaintiff alleges that she is
Muslim and has been a member of the Moorish Science Temple of
America for her entire life.  (Compl. ¶ 42.)  Her objection to
the COVID-19 vaccine was twofold: 1) Plaintiff was against the
practice of testing vaccines on aborted fetal cell lines, and 2)
Plaintiff believes her "body is [her] temple," her "GOD GIVEN
immune system" was working the way it was designed to, and "the
Creator of all things had the Omniscience to create in nature
sustenance to sustain all beings."  (Ex. F at 1.)  The Complaint
explicitly states that Plaintiff's opposition to the COVID-19
vaccine was based on "long recognized religious beliefs,
including her body as the temple of God, reliance on her God-
given immune system, and opposition to abortion."  (Compl.
¶ 59.)  At the Motion to Dismiss stage, these allegations are
sufficient.

    The Fund's assertion that Plaintiff must cite a religious
text or otherwise explain the specific aspect of her religion
motivating her objection to the COVID-19 vaccine is belied by

numerous decisions in this Circuit.  See, e.g., Mumin v. City of New York, No. 23-CV-03932, 2024 WL 5146085, at *2 (S.D.N.Y. Dec. 17, 2024) (plaintiff sufficiently alleged a sincere religious belief where she requested an exemption from the COVID-19 vaccine mandate "based on her Islamic religion, which prohibits her from being vaccinated against all conditions, ailments[,] and impairments, including the corona virus."); Riley v. New York City Health & Hosps. Corp., No. 22-CV-2736, 2023 WL 2118073, at *4 (S.D.N.Y. Feb. 17, 2023) (rejecting defendant's argument that plaintiff did not plead "why her self-identification as a 'Christian' is in conflict with Defendant's requirement that she receive the COVID-19 vaccine" at the motion to dismiss stage); Moore v. Montefiore Med. Ctr., No. 22-CV-10242, 2023 WL 7280476, at *5 (S.D.N.Y. Nov. 3, 2023) (plaintiff set forth a prima facie case despite failing to identify her religion and allege how it conflicted with receiving the vaccine, given plaintiff's "implicit descri[ption] of herself as a Christian" based on references to Bible verses); Algarin, 678 F. Supp.3d at 508 (plaintiff sufficiently alleged bona fide religious belief where he informed his employer that "as a practicing Christian, his sincerely held religious beliefs prevented him from receiving 'a COVID-19 vaccine that was tested, developed, or produced with fetal cell lines derived from procured abortions.'"); Haczynska v. Mount Sinai Health

Sys., Inc., 738 F. Supp. 3d 300, 310 (E.D.N.Y. 2024) (plaintiff
stated prima facie case where her request "cited her strong
religious beliefs as a Roman Catholic and asserted that the
vaccines went against her sincerely held religious beliefs
because they were produced using fetal cell lines derived from
aborted fetuses"); Langer v. Hartland Bd. of Educ., No. 22-CV-
01459, 2023 WL 6140792, at *5 (D. Conn. Sept. 20, 2023)
(plaintiff plausibly alleged a sincerely held religious belief
despite failing to allege the name of her religion or its
overall belief structures, but alleged her objection to the
COVID-19 vaccine was based on "religious expression," including
that she has "sincerely-held beliefs" and that "[t]esting me
when I am healthy and without symptoms is coercing me to
participate in an untruth, which I cannot do.").

The Fund relies on Winans v. Cox Auto., Inc., where the
court dismissed the Title VII claim of a plaintiff who, despite
requesting both a medical and religious exemption from the
COVID-19 vaccine, was not a member of a religious organization,
either formal or informal.  669 F. Supp. 3d 394, 401 (E.D. Pa.
2023).[3]  Similarly, in Cagle v. Weill Cornell Med., plaintiff

---

[3] Other decisions cited by the Fund which dismissed claims of
failure to accommodate religious exemptions from the COVID-19
vaccination have recently been reversed.  Kiel v. Mayo Clinic
Health Sys. Se. Minnesota, 685 F. Supp. 3d 770, 783 (D. Minn.
2023), rev'd and remanded sub nom. Ringhofer v. Mayo Clinic,
Ambulance, 102 F.4th 894 (8th Cir. 2024) (cont'd)

failed to allege a bona fide religious belief where she baldly alleged only that "she ha[d] 'religious beliefs' and that those beliefs include 'religious practices of non-vaccination.'" 680 F. Supp. 3d 428, 435 (S.D.N.Y. 2023).  Plaintiff makes factually supported allegations that her opposition to the COVID-19 vaccine was based on her Islamic beliefs—a far cry from the bare allegations of religion in <u>Winans</u> and <u>Cagle</u>.[4]

Ultimately, the Complaint raises a plausible inference that Plaintiff's objection to the COVID-19 vaccine was religious in nature.  "[W]hether [Plaintiff] had a genuinely religious reason for objecting" to the COVID-19 vaccine "is a question for the parties to explore in discovery and, if necessary, to be resolved by a factfinder at trial."  <u>Langer</u>, 2023 WL 6140792, at *7.  The Fund's Motion to Dismiss Plaintiff's Title VII claim is denied.

2. <u>NYSHRL and NYCHRL Failure to Accommodate Claims</u>

Plaintiff also alleges concurrent claims for failure to

---

(cont'd)(COVID-19 vaccination requirements conflicted with Christian plaintiffs' anti-abortion beliefs and view that the body is a temple); <u>Passarella v. Aspirus, Inc.</u>, No. 22-CV-287, 2023 WL 2455681, at *3-*4 (W.D. Wis. Mar. 10, 2023), <u>rev'd and remanded</u>, 108 F.4th 1005 (7th Cir. 2024) (Christian plaintiffs invoked Bible and asserted "[m]y body is a temple of the Holy Spirit").

[4] Notwithstanding the Court's decision declining to consider Plaintiff's medical records, <u>see</u> <u>supra</u>, Part III(A), the Fund's argument that Plaintiff's medication use contradicts her religious beliefs (Def. Br. at 13-14) goes to the sincerity of Plaintiff's beliefs, a question of fact inappropriate for resolution at this stage.  <u>See</u> <u>Gardner-Alfred</u>, 651 F. Supp. 3d at 721.

accommodate her religious beliefs based on the NYSHRL and NYCHRL. (See Compl. ¶¶ 89-95, 96-102.)    It follows from the Court's decision on Plaintiff's Title VII claim that Defendant's Motion to Dismiss the NYSHRL and NYCHRL claims must also be denied, "as the standards applicable to those claims are either the same or more employee-friendly than the standards applicable to Title VII." Rizzo v. New York City Dep't of Sanitation, No. 23-CV-7190, 2024 WL 3274455, at *3 (S.D.N.Y. July 2, 2024) (denying motion to dismiss plaintiff's Title VII, NYSHRL, and NYCHRL failure to accommodate claims); see also Loeffler v. Staten Island Univ. Hosp., 582 F.3d 268, 278 (2d Cir. 2009) (explaining that "claims under the City HRL must be reviewed independently from" and "more liberally" than their federal counterparts); Doolittle v. Bloomberg L.P., 2023 WL 7151718, at *7 (S.D.N.Y. Oct. 31, 2023) (noting that following the New York legislature's 2019 amendment to the NYSHRL, courts scrutinize discrimination claims brought pursuant to the NYSHRL under a more lenient pleading standard than Title VII claims, similar to the standard for NYCHRL discrimination claims).

## IV.    **Conclusion**

For the foregoing reasons, Defendant's Motion to Dismiss is DENIED.    The Clerk of Court is respectfully directed to close docket entry 9.

The parties and counsel shall appear for a settlement conference on March 11, 2025 at 10 a.m. in Courtroom 12A, 500 Pearl Street, New York, New York 10007.  Plaintiff and a decision maker for Defendant shall attend.


**SO ORDERED.**

Dated:      February 19, 2025
            New York, New York

_____
LORETTA A. PRESKA
Senior United States District Judge