UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| NAOMI GASKIN-EL,<br>Plaintiff,<br>-against-<br>1199SEIU NATIONAL BENEFIT FUND,<br>Defendant. | No. 24-CV-1169 (LAP)<br>OPINION AND ORDER |

LORETTA A. PRESKA, Senior United States District Judge:

Before the Court are cross motions for summary judgement pursuant to Federal Rule of Civil Procedure 56. Plaintiff Naomi Gaskin-El ("Plaintiff" or "Gaskin-El") moves for summary judgement on Defendant 1199SEIU National Benefit Fund's ("Defendant" or "the Fund") undue hardship defense, seeking to preclude that defense at trial. The Fund opposes the motion.

At the same time, the Fund moves for summary judgment seeking dismissal of Gaskin-El's claim. Gaskin-El opposes the motion.

For the reasons set forth below, the Fund's motion is DENIED. Gaskin-El's motion is GRANTED.

## I. Background

The following facts are not in dispute.

Gaskin-El was employed by the Fund as a quality control reviewer from March 2004 to November 19, 2021, when her employment was terminated due to noncompliance with the Fund's COVID-19 vaccination policy. (See Plaintiff's SUF [dkt. no. 38] ¶¶ 1, 27,

28; Defendant's Response to Plaintiff's SUF [dkt. no. 49] ¶¶ 27, 28 (admitting the same).)

At the start of the COVID-19 pandemic, beginning in March 2020, the Fund's employees worked remotely. (SUF ¶ 5.) Certain personnel, including Gaskin-El, had to work remotely until August 2020, when the Fund partially resumed office operations on a rotating schedule. (Id. ¶¶ 6, 7.) In November 2020, the Fund's offices once again closed to non-essential personnel, including Gaskin-El, and the Fund required these employees to work remotely until the Fund's offices reopened in June of 2021 with the same rotating schedule. (Id. ¶¶ 7,8.)

On August 27, 2021, the Fund notified its employees via email that it was adopting a mandatory COVID-19 vaccination policy, requiring all staff to "be partially vaccinated no later than Monday, October 4, 2021, and fully vaccinated by October 25, 2021." (Id. ¶ 9.) Additionally, "all employees [were] required to be vaccinated against COVID-19 . . . unless a reasonable accommodation for medical or religious reasons [was] approved." Employees whose request for an accommodation was granted would be required "to provide bi-weekly negative test results to be granted entry into any Fund facility." (Id. ¶¶ 10, 12.)

On September 16, 2021, Gaskin-El submitted a written request to the Fund, seeking a religious accommodation to the vaccination policy. (Id. ¶¶ 14, 15.) Gaskin-El requested to work remotely

until the "covid mandate is no longer in force." (Id. ¶ 16.) Her request contained a "Declaration of Faith" from the Moorish Mosque in Brooklyn, New York. (See Compl. Exhibit D [dkt. 1-4].) It contained a statement from Plaintiff's religious leader, Yusef Ali Ibrahim, Grand Sheik, in support of her request, claiming the basis for Gaskin-El's beliefs to be the "U.S. Declaration of Independence," the "Bill of Rights – Amendment 1," and the "United States Constitution – Article VI." (Id.) There was also a statement describing Plaintiff's religious beliefs, however there was no specific explanation as to why or how her beliefs specifically conflicted with the vaccine requirement. (Id.)

On October 1, 2021, Gaskin-El received a letter from the Fund's Human Resources department, denying the request for the exception, stating that her request "fail[ed] to identify the aspect of your religious beliefs that prevents you from receiving any available COVID-19 vaccines." (See Plaintiff's SUF [dkt. no. 38] ¶¶ 17, 18); Exhibit 4). The denial letter further instructed Gaskin-El to work remotely starting October 5, 2021, and starting October 20, 2021, she would be placed on unpaid leave for up to thirty days, pending compliance with the vaccination requirement. (Id. ¶ 19). The letter also invited a submission of additional material in support of the request as well as a HIPPA authorization form to obtain medication and vaccination records. (Id. ¶ 18.)

Gaskin-El submitted additional information to the Fund on October 4, 2021, including the requested HIPPA authorization form, as well as a personal statement, stating Plaintiff's objection to the vaccine was based on her belief that "[m]y body is my temple and in that temple I was created with a natural immune system to guard against and fight any foreign agent." (Id. ¶ 18; see also Aff. of Kevin Hurley [dkt. no. 40-5] Exhibit E.) Gaskin-El explained, "I am against the use of [sic] practice of testing vaccines on aborted fetal cell lines as is well documented. I am also against the use of all vaccines. My body is my temple and in that temple I was created with a natural immune system to guard against and fight any foreign agent." (Dkt. no. 40-5 at 2; dkt. no. 45 at ¶ 18.)

Gaskin-El wrote that the only prescribed medication she had taken was thyroid medication and "to the best of [her] knowledge from research it is not made from aborted fetuses." (Dkt. no. 40-5 at 2.) She added "[p]lease do not tell me that man made synthetic antibodies are better than my God given ones . . . . I fully believe that the Creator of all things had the Omniscience to create in nature sustenance to sustain all beings." (Id.) The document that Gaskin-El attached to her statement from the "Moorish Holy Temple of Science of the World" relates to the passage of a Connecticut Bill and does not mention COVID-19 but objects to vaccines "derived from aborted fetal cell tissue" as

"diametrically against our belief that no life should be 'aborted'. Let alone used as an agent to be injected into the 'temple of God.'" (Id. at 12.)

Gaskin-El received a final denial letter via overnight mail on October 22, 2021. The letter stated that there was no cause to grant Gaskin-El the religious exception from the vaccination policy. (See Plaintiff's SUF [dkt. no. 38] ¶¶ 23, 24; Exhibit 5.) It specified that mRNA vaccines required by the vaccine policy are "not derived, developed or produced in fetal cell lines" and that if Gaskin-El's religious beliefs "prohibit[ed] the use of pharmaceuticals that affect, augment, or counteract the natural God-given systems of the human body and their functions," then Plaintiff's medical history would show no medications for herself or her minor children. (Id. ¶ 24; Exhibit 5.) Gaskin-El was placed on leave without pay beginning October 20, 2021, and terminated as an employee the Fund on November 19, 2021. (Id. ¶ 26-27).

## II. **Standard of Review**

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). The movant bears the burden to show the absence of a dispute as to a material fact. See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). A genuine dispute of material fact exists if "the evidence

is such that a reasonable jury could return a judgment for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, (1986).

In assessing the record, the Court "must view the evidence in the light most favorable to the [non-moving] party." Tolan v. Cotton, 572 U.S. 650, 657 (2014) (internal quotation marks omitted). The Court must also "resolve all ambiguities and draw all reasonable inferences against the movant." Caronia v. Philip Morris USA, Inc., 715 F.3d 417, 427 (2d Cir. 2013).

Where the non-moving party bears the burden of proof at trial, the moving party may discharge its summary judgment burden in "two ways: (1) by submitting evidence that negates an essential element of the non-moving party's claim, or (2) by demonstrating that the non-moving party's evidence is insufficient to establish an essential element of the non-moving party's claim." Nick's Garage, Inc. v. Progressive Cas. Ins. Co., 875 F.3d 107, 114 (2d Cir. 2017).

At the same time, "the mere existence of some alleged factual dispute" is not enough to prevent summary judgment, the dispute must be material. Anderson 477 U.S. at 247-48. A fact is "material" only if it "might affect the outcome of the suit under the governing law." Id. at 248. Finally, "conclusory statements or mere allegations are not sufficient to defeat a summary judgment

motion." Johnson v. Killian, 680 F.3d 234, 236 (2d Cir. 2012) (per curiam) (alterations omitted).

## III. Discussion

### A. The Fund's Motion for Summary Judgment on Sincerity of Religious Belief

Defendant moves for summary judgment on the grounds that Gaskin-El has failed to raise a genuine dispute of material fact as to whether her objection to the COVID-19 vaccination requirement was grounded in a sincerely held religious belief. For the reasons set forth below, Defendant's motion is denied.

"Title VII makes unlawful an employer's refusing to hire, discharging, or otherwise discriminating against a person because of the person's religion." Bergin v. New York State Unified Ct. Sys., --- F.4th ---- 2026 WL 2724974, at *3 (citing 42 U.S.C. § 2000e-2(a)(1)). As recently clarified by the United States Court of Appeals for the Second Circuit, to establish a prima facie case of religious discrimination based on a failure to accommodate claim under Title VII, "a plaintiff must demonstrate (1) that she actually required an accommodation of her religious practice, and (2) that the employer's desire to avoid the actually required prospective accommodation was a motivating factor in (3) an adverse employment decision." Bergin, 2026 WL 2724974, at *1. The relevant statute, section 2000e-2(a)(1), "does not impose a knowledge requirement," rather it, "prohibits certain motives,

regardless of the state of the actor's knowledge”, therefore,“[a]n employer may not make an applicant's religious practice, confirmed or otherwise, a factor in employment decisions.” E.E.O.C. v. Abercrombie & Fitch Stores, Inc., 575 U.S. 768, 773 (2015).

Of particular relevance here, the Court of Appeals has addressed the evidentiary standard governing the first element required to make a prima facie case in Gardner-Alfred v. Federal Reserve Bank of New York, 143 F.4th 51 (2d Cir. 2025). Under Gardner-Alfred, disputes over the sincerity of an employee's religious beliefs are typically fact-intensive and should not be resolved at summary judgment where genuine credibility issues exist. See 143 F.4th at 64. The Court of Appeals emphasized that courts may not evaluate the doctrinal correctness or validity of a plaintiff's stated belief, and that the job of choosing whether there are both religious and/or secular objections is “for the jury, not the district court on summary judgement.” Id. The Supreme Court similarly recognized that “religious beliefs need not be acceptable, logical, consistent, or comprehensible to others in order to merit” protection. Thomas v. Review Bd. of Indiana Emp. Sec. Div., 450 U.S. 707, 714 (1981). Nor must a belief align with any official religious doctrine to qualify for protection under Title VII. See Farrell v. City of New York, No. 1:23-CV-04329 (JLR), 2024 WL 3849333 (S.D.N.Y. Aug. 16, 2024).

Applying these principles, the Court finds that Gaskin-El has adduced sufficient evidence to create a genuine dispute of material fact on sincerity. Gaskin-El submitted two rounds of written statements to the Fund articulating a consistent, theistic basis for her objection: invoking the belief that her body is a God-given temple, that her natural immune system was divinely created, and that the use of aborted fetal cell lines in vaccine development was incompatible with her religious convictions. (Dkt. no. 40-5 at 2.) Both submissions were supported by a letter from her religious leader, Grand Sheik Yusef Ali Ibrahim, and documentation from the Moorish Holy Temple of Science of the World. (Plaintiff's SUF ¶¶ 14, 39, 48.) The consistency of this theistic framing across multiple submissions, combined with institutional religious support, is sufficient to raise a genuine issue of material fact.

Any evidence of potentially inconsistent behavior from Gaskin-El may be used by a jury to discredit testimony, however, it "is not, in and of itself, sufficient to support a grant of summary judgement," as the Court may not make credibility determinations or weigh evidence at this stage of the proceeding. Gardner-Alfred, 143 F.4th at 64. Accordingly, the Court declines to resolve the issue of Gaskin-El's sincerity as a matter of law.

Moreover, Defendant's assertion that Gaskin-El's fetal cell-based objection was factually undermined by the Fund's October 22, 2021, denial letter —— which stated that the mRNA vaccines required

under Defendant's policy were not derived, developed, or produced using fetal cell lines –– is inapposite for summary judgment. Indeed, the Court of Appeals addressed a similar argument in Gardner-Alfred and found that to be insufficient to support summary judgment. See 143 F.4th at 67 (holding that "[t]he district court improperly gave dispositive weight to the fact that as an empirical matter the mRNA vaccines were not derived from, manufactured with, or produced with aborted fetal cells, when what actually matters at summary judgement is that a reasonable jury could find that the Covid-19 vaccines were produced with aborted fetal cells in a manner that [plaintiff] believed would contravene [their] religious beliefs.").

The Court further notes that the presence of overlapping secular and religious motivations does not defeat a Title VII claim, provided the request is at least partially grounded in religious belief. Again, the Court of Appeals held in Gardner-Alfred that mixed motives do not forfeit an employee's accommodation claim and that a jury may find both types of objections present without that combination being fatal to sincerity. Id. at 64.

Accordingly, Defendant's motion for summary judgment is denied. The question of whether Plaintiff held a sincerely held religious belief that conflicted with Defendant's vaccination policy is a question for jury determination.

**B. Plaintiff's Motion for Summary Judgment to Preclude the Undue Hardship Defense**

Gaskin-El moves for summary judgment to preclude the Fund from asserting an undue hardship defense at trial, arguing that no reasonable jury could find that accommodating Plaintiff's religious beliefs would have imposed a cognizable hardship on Defendant's operations. For the reasons set forth below, Plaintiff's motion is granted.

As previously discussed, in this Circuit, federal courts "treat failure-to-accommodate-religion claims in two steps. First, we ask whether the plaintiff has stated a 'prima facie case' of religious discrimination. Second, if so, we determine whether the employer 'offer[ed] him or her a reasonable accommodation, unless doing so would cause the employer to suffer an undue hardship.'" Bergin v. New York State Unified Ct. Sys., --- F.4th ---- 2026 WL 2724974, at *3.

Once the plaintiff has made the first showing, "the defendant/employer then must show special (typically case-specific) circumstances that demonstrate undue hardship in the particular circumstances." US Airways, Inc. v. Barnett, 535 U.S. 391, 402 (2002). In other words, an employer may defeat liability by demonstrating that providing a reasonable accommodation would have imposed an undue hardship on the conduct of its business. See 42 U.S.C. § 2000e(j); Cosme v. Henderson, 287 F.3d 152, 158

(2d Cir. 2002). The Supreme Court has clarified that undue hardship requires a showing of "substantial increased costs in relation to the conduct of [the employer's] particular business." Groff v. DeJoy, 600 U.S. 447, 470 (2023). Whether such costs exist "takes into account all relevant factors in the case at hand, including the particular accommodations at issue and their practical impact in light of the nature, size and operating cost of an employer." Id. at 470-71 (cleaned up and internal quotation marks omitted).

In addition, "[t]o survive summary judgment the nonmoving party must come forward with specific facts showing that there is a genuine issue for trial." Niagara Mohawk Power Corp. v. Jones Chem. Inc., 315 F.3d 171, 175 (2d Cir. 2003) (quotation marks, emphasis, and citations omitted). And "[c]onclusory allegations, conjecture, and speculation . . . are insufficient to create a genuine issue of fact." Id. "To defeat summary judgment, therefore, nonmoving parties must do more than simply show that there is some metaphysical doubt as to the material facts." Jeffreys v. City of New York, 426 F.3d 549, 554 (2d Cir. 2005) (quotation marks and citation omitted).

The Fund has failed to produce specific facts showing that there is a genuine issue for trial with respect to the affirmative defense of undue hardship.

The Fund's own vaccination policy contemplated a testing-based accommodation, expressly providing that employees granted a religious exception would be "required to provide bi-weekly negative test results to be granted entry into any fund locations." (Plaintiff's SUF ¶ 12 (admitted).) The existence of this policy alone forecloses any contention that accommodating Plaintiff was categorically unreasonable.

Defendant has failed to identify any other evidence that sufficiently creates a triable issue on undue hardship. While the Fund is correct that it was not required to "specifically plead an undue hardship defense," dkt. no. 48 at 8, this matter is well beyond the pleading stage. Indeed, discovery has been complete for over a year. And, at this stage, Defendant's undue hardship showing consists of a single, nine-line declaration containing only a generalized and conclusory assertion that accommodating Plaintiff would have imposed a hardship. The declaration's sole substantive statement, claiming "the Fund's operations would have been substantially burdened because of the degree of additional supervision and attention that would have been required to oversee the Plaintiff", is itself conclusory, identifying no specific facts, financial costs, staffing figures or operational data to substantiate the claim. (See Declaration of Richard Whitter [dkt. no. 47, ¶ 5]). Such a bare assertion is insufficient to create a genuine dispute of material fact. See Equal Emp. Opportunity

Comm'n v. Drivers Mgmt., LLC, 142 F.4th 1122, 1132 (8th Cir. 2025) (affirming summary judgment in favor of plaintiff, precluding undue hardship affirmative defense, where defendant "produced virtually no evidence" on the matter and relied only on a "conclusory statement that any accommodation would fundamentally change" its business).

Accordingly, Plaintiff's motion for summary judgment to preclude the undue hardship defense is granted. The Fund may not present this defense at trial.

## IV. Conclusion

In sum, Defendant 1199SEIU National Benefit Fund's motion for summary judgement is DENIED, and Plaintiff Gaskin-El's motion for partial summary judgment is GRANTED.

Counsel shall confer and inform the Court by letter no later than October 12, 2026, how they propose to proceed.

The Clerk of Court shall close docket numbers 36 and 39.

**SO ORDERED.**

Dated: September 29, 2026
New York, New York

Loretta A. Preska

LORETTA A. PRESKA
Senior United States District Judge